UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x

AKF, INC.

                Plaintiff,

   -against-

KESSMAN GROUP PAINTING &
DESIGNS, INC. ET AL.
-----------------------------------------------x

## MEMORANDUM AND ORDER

Case No. 1:19-CV-6312-FB-LB

*Appearances*:
*For the Plaintiff*:
CHRISTOPHER R. MURRAY
STEIN ADLER DABAH &
ZELKOWITZ LLP
1633 Broadway
46th Floor
New York, NY 10019

*For the Defendant*:
HILEL I. PARNESS.
PARNESS LAW FIRM PLLC
136 Madison Ave,
6th Floor
New York, NY 10016

**BLOCK, Senior District Judge:**

      In October of 2019, Plaintiff AKF, Inc. entered into a "Revenue Purchase

Agreement" ("RPA") with Defendant Kessman Group Painting & Designs, Inc.

("Kessman").[1] The RPA provided that AKF would pay Kessman $144,600 in

exchange for $215,454 of Kessman's future receivables. The receivables were to

be deposited in Kessman's bank account from which AKF would be entitled to

---

[1] Defendants Margaret and Matthew Kessman ("the Guarantors") also signed the
RPA.

withdraw a sum of money each day. On November 4, 2019, Kessman blocked

AKF's access to its bank account, and AKF filed this action for breach of contract.

Kessman moves to compel arbitration and dismiss this case for lack of

jurisdiction, failure to state a claim and improper venue. If the Court orders

arbitration but not dismissal, Kessman instead seeks a stay pending arbitration. For

the reasons stated below, Kessman's motion to dismiss is denied, but its motions to

compel arbitration and for a stay are granted. This case is stayed pending the

outcome of the arbitration proceeding.

## I. Background

Only facts relevant to the parties' agreement to arbitrate are recited below.

The Court takes no position on the merits of the parties' dispute. *See Ragone v. Atl.*

*Video of the Manhattan Ctr*, 595 F.3d 115, 118 (2d Cir. 2010) ("Properly

considered, this question [of arbitrability] takes no account of the merits of claims

asserted in the complaint").

## A. The Agreement

Section 4.11 of the RPA governs arbitration. It is reproduced below in

pertinent part:

> **4.11: ARBITRATION. IF FUNDER [AKF, Inc.], MERCHANT [Kessman] OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF FUNDER, MERCHANT OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF FUNDER, MERCHANT OR ANY GUARANTOR DOES NOT REACH**

**AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, FUNDER, MERCHANT OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). FUNDER WILL PROMPTLY REIMBURSE MERCHANT OR THE GUARANTOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH MERCHANT AND THE GUARANTOR MUST PAY FILING FEES, FUNDER WILL ONLY REIMBURSE MERCHANT'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, FUNDER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES.**

ECF No. 1, Ex. 1 at 11 (boldface and capitalization in original).[2] In addition to this provision, the RPA contains a section entitled "Binding Effect; Governing Law, Venue and Jurisdiction." *Id.* at 10. That section provides that the RPA "shall be governed in accordance with the laws of the state of New York," designates "any court sitting in New York State" as an "Acceptable Forum," and explicitly states that Kessman "agrees that [all] Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums, and waives any and all objections to jurisdiction or venue." *Id.*

## B. Procedural History

On November 7, 2019, AKF filed suit. Service was completed on November 14, 2019. ECF Nos. 10-12. Because neither Kessman nor the Guarantors filed an answer, AKF asked the Clerk of Court to enter their default on December 6, 2019. ECF Nos. 14-16. However, no certificates of default were issued.

---

[2] The abbreviation "Ex." indicates a citation to the exhibit numbers automatically generated by the Electronic Court Filing System ("ECF").

Also on December 6, 2019, Steven Zakharayayev, one of Kessman's attorneys, filed a procedurally improper motion for admission *pro hac vice*, which was denied without prejudice. ECF Nos. 17-18. Eleven days later, another Kessman attorney, Hilel Parness, filed a procedurally correct notice of appearance, and a request for a pre-motion conference on the pending motions. ECF Nos. 20-21.

While the Court considered Kessman's application, the parties communicated among themselves. On December 6, 2019, Attorney Zakharayayev sent a letter to AKF giving "notice of [Kessman's] intent to arbitrate this matter with the American Arbitration Association. . .in accordance with Section 4.11 of the RPA" and asking AKF to dismiss its action. ECF No. 31, Ex. 2 at 30. On the same day, Attorney Zakharayayev sent an E-Mail to AKF's counsel to ask if AKF was "amenable to allowing the response to plaintiff's complaint to be filed today." *Id.* at 28. AKF responded to Kessman's letter via E-Mail on December 12, 2019. ECF No. 31, Ex. 2 at 32. AKF "respectfully disagreed with [Kessman's] position [that arbitration is required]," but acknowledged that Kessman was "free to make an application [for an order compelling arbitration] to the court." *Id.*

On March 3, 2020, the Court held a pre-motion conference. Nothing was resolved at the conference, and Kessman filed the instant motion.

## II. Legal Standards

### A. Motion to Compel Arbitration

Section 2 of the Federal Arbitration Act (FAA) provides that arbitration clauses in commercial contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Wexler v. AT&T* Corp., 211 F. Supp. 3d 500, 502 (E.D.N.Y. 2016) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Nonetheless, "a court may only order a dispute to arbitration if, under the principles of contract law, the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* (internal quotations and citations omitted, emphasis in original).

A party may waive its right to arbitrate. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 229 (2d Cir. 2001). Courts in the Second Circuit "consider three factors in determining whether a party has waived its right to arbitration: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice [to the opposing party]." *Id.* "[Doubts] concerning whether there has been a waiver are resolved in favor of

arbitration." *Id.* (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)).

When deciding a motion to compel arbitration, a court takes the plaintiff's allegations *regarding the underlying dispute* as true but treats allegations related to arbitrability like assertions in a summary judgment motion.[3] *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "[If] there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (internal citations omitted).

## B. Entering and Vacating Default

Federal Rule of Civil Procedure 55(a) states that the Clerk of Court "must enter [a] party's default" when "a party against whom judgment is sought has failed to plead or otherwise defend." However, district courts have discretion to vacate the Clerk's entry of default for "good cause" and may do so *sue sponte*. *See* Fed. R. Civ. P. 55(c); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (grant of discretion); *see also U.S. Commodity Futures Trading Comm. v. Lamarco*, 2018 WL 2103208, at *1 (E.D.N.Y. May 7, 2018) (vacating entry of default *sua sponte* in the interest of justice).

---

[3] The Court also takes AKF's allegations as true for purposes of its Rule 12 analysis.

Courts consider three factors when deciding whether to vacate a default: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *Id.* at *8 (citing *United States v. Chesir*, 526 F. App'x 60, 61 (2d Cir. 2013)). When exercising their discretion, courts show a "strong preference for resolving disputes on the merits" and "resolve all doubts in favor of the party seeking relief from the [default] judgment." *Green*, 420 F.3d at 104 (internal quotations and citations omitted).

### III. Discussion

Kessman argues that this case is subject to mandatory arbitration under RPA § 4.11 and must be dismissed. *See* ECF No. 30, Ex. 1. In response, AKF claims that Kessman waived its right to arbitrate by "defaulting" in the district court action and failing to comply with procedures outlined in RPA § 4.11. ECF No. 31 at 3. It further argues that Kessman consented to this Court's jurisdiction when it signed the RPA. *See* ECF No. 31 at 11; s*ee also* ECF No. 1, Ex. 1 at 10 (designating New York courts as "Acceptable Forums"). Having considered these arguments, the Court finds that (1) Kessman did not waive its right to arbitrate; and (2) the parties' dispute is subject to arbitration under the RPA; but (3) this case should be stayed, not dismissed, pending the outcome of the arbitration proceeding.

**A. Kessman did not waive its right to arbitrate**

The Court rejects AKF's waiver argument for two reasons.

**First**, the record does not conclusively establish that Kessman defaulted. Although Kessman missed its deadline to answer AKF's complaint, the Clerk of Court never issued a Certificate of Default, and the parties proceeded with motions practice. These facts are sufficient to create "doubt" about the propriety of default and "concerning whether there has been a waiver" of Kessman's right to arbitrate. *See Green*, 420 F.3d at 104; *Blystad Shipping & Trading, Inc.*, 252 F.3d at 229. Because the Court resolves doubts about default "in favor of the party seeking relief from [default] judgment" and doubts about "waiver. . . in favor of arbitration," it finds that Kessman was not in default when it filed its motion to compel arbitration. *Id.*

Alternatively, even if default had been entered, the Court would find good cause to vacate it *sua sponte*. Kessman has shown that the RPA's arbitration provision creates a potentially "meritorious defense," and AKF fails to show why allowing Kessman to file a response eleven days after the Federal Rules' deadline prejudices it. *See generally Lamarco*, 2018 WL 2103208, at *9 (vacating "certificate of default entered less than one month" after commencement of litigation). AKF's assertion that it would be prejudiced because Kessman seeks arbitration to "delay this case in order to move funds out of Plaintiff's reach" is

entirely speculative and therefore irrelevant to the Court's analysis. *See* ECF No. 31 at 5.

**Second**, the facts of this case would not justify waiver even if Kessman had defaulted. In support of waiver, AKF cites the Second Circuit's decision in *Baker & Taylor, Inc. v. AlphaCraze.com Corp.* in support of its claim that "because Defendants defaulted in this proceeding, [they] have waived their right to compel arbitration." ECF No. 31 at 6 (citing 602 F.3d 486, 492 (2d Cir. 2010)). But AKF overstates the circuit's holding, which does not establish that default necessarily results in waiver. Rather, in *AlphaCraze*, the Second Circuit concluded that a party waived its right to arbitration by "not appear[ing] or [seeking] to defend itself in any way" in a case "that proceeded in the district court for nearly eight months, during which time [the plaintiff] sought and obtained discovery and engaged in motions practice going to the merits." 602 F.3d at 492. After this account of the defendant's inaction, the *AlphaCraze* court wrote, "[in] such circumstances, [the defendant] has waived its right to arbitrate. . . pursuant to this court's caselaw" and included a citation to the three-factor test established in *Blystad Shipping & Trading, Inc.. Id.* (citing *Blystad Shipping & Trading, Inc.*, 252 F.3d at 229). Thus, the plain language of *AlphaCraze* suggests that a party's default is just one of many "circumstances" that the Court may weigh when deciding whether a party has waived its rights, not that there is a "bright line rule" prohibiting parties in

9

default from compelling arbitration. *See generally Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) ("The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules") (internal citations omitted). Just as the Second Circuit did in *AlphaCraze*, this Court applies the three-factor *Blystad Shipping & Trading* test to decide whether a party has waived its right to arbitrate.

The *Blystad Shipping & Trading* factors do not support waiver. Even assuming that Kessman defaulted—which it did not—the Court does not believe that Kessman waived its right by moving to compel arbitration eleven days after AKF sought a certificate of default, especially since Kessman engaged in letter and E-Mail communication with AKF several days before filing its motion. *Compare Blystad Shipping & Trading, Inc.,* 252 F.3d at 229 (party that filed a motion to compel arbitration "just eight days" after event allegedly giving rise to waiver did not waive its right to arbitrate) *with AlphaCraze, Inc.*, 602 F.3d at 492 (party waived its right to arbitrate by filing a motion to compel arbitration "nearly eight months" after the complaint was filed). Just as importantly, no discovery has been exchanged in this case, and the only motion filed is a motion to compel arbitration. *Cf. AlphaCraze, Inc.*, 602 F.3d at 492 (completion of discovery and "motions practice going to the merits" supported waiver); *Slone*, 4 F.3d at 179. ("Waiver will be inferred when a party engages in *protracted* litigation") (emphasis added).

10

Finally, the Court rejects AKF's speculative claim of prejudice for the reasons stated in its analysis of the default issue.

## B. The RPA compels arbitration

AKF does not argue that the RPA's arbitration clause (which it drafted) is overbroad or ambiguous, nor can it reasonably claim that an action for breach of contract falls outside the scope of a clause which covers "all disputes and claims arising out of or relating to [the RPA]." ECF No. 1, Ex. 1 at 11; ECF No. 30, Ex. 1 at 6. *See American E Group, LLC v. Livewire Ergogenics, Inc.*, 432 F.Supp.3d 390, 398 (S.D.N.Y. 2020) (concluding that arbitration provision covering "any dispute" was "unambiguous"). Rather, AKF argues that Kessman may not compel arbitration because "the parties can only seek to compel arbitration if they do not 'reach an agreement to resolve the claim within 30 days after the notice [of intent to arbitrate] is received,'" and Kessman "made no attempts to resolve this dispute." ECF No. 31 at 8 (citing RPA § 4.11). Citing New York law on contractual conditions precedent, AKF argues that Kessman's failure to "fulfill. . . a pre-requisite to seeking arbitration" prevents enforcement of the RPA's arbitration clause as a matter of contract law. *Id.* at 9 (citing *Matter of Frouge Corp. (N.Y.C. Hous. Auth.)*, 26 A.D. 2d 269, 273 (App. Div. 1st Dept. 1966)). *See also* ECF No. 1, Ex. 1 at 10 (RPA governed by New York law).

AKF's argument rests on RPA § 4.11's statement that, "[if] Funder, Merchant, or any Guarantor does not reach an agreement to resolve the claim within 30 days after the notice [of intent to arbitrate] is received, Funder, Merchant or any Guarantor may commence an arbitration proceeding." ECF No. 1, Ex. 1 at 11. In AKF's view, this phrase creates an obligation to engage in "good faith [attempts] to resolve. . . dispute[s]," which Kessman allegedly failed to do. ECF No. 31 at 9. Yet RPA § 4.11 states only that the parties have 30 days to "reach an agreement to resolve [a] claim." ECF No. 1, Ex. 1 at 11. It does not say that they must take specific steps in order to do so or that they must engage in an informal mediation process "in good faith." Desirable as efforts toward mediation are, this Court may not "rewrite, under the guise of interpretation, a term of the [parties'] contract when the term is clear and unambiguous, nor redraft a contract to accord with its instincts for the dispensation of equity." *Livewire Ergogenics*, *Inc.*, 432 F.Supp.3d at 398 (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)).

The Court will not interpret a provision that merely prescribes a timeframe for informal negotiation as creating a penalty for a party alleged to negotiate in bad faith.[4] AKF's arguments do not allow it to avoid the consequences of its agreement

---

[4] Even if RPA § 4.11 were ambiguous, the Court would hesitate to endorse AKF's more draconian reading of its requirements. "Ambiguities [in a contract] are

"to arbitrate all disputes and claims arising out of or relating to [the RPA]." ECF No. 1, Ex. 1 at 11.

## C. This case should be stayed, not dismissed

Finally, the Court rejects Kessman's Rule 12 arguments. The RPA contains a forum-selection clause, which "waives any and all objections to jurisdiction or venue" in "any court sitting in New York State." ECF No. 1, Ex. 1 at 10. Forum selection clauses are "presumptively valid matters of contract," and Kessman offers no non-conclusory reason why this one should not be enforced. *AIG Mexico Seguros InterAmericana, S.A. de C.V. v. M/V Zapoteca*, 844 F.Supp.2d 440, 444 (S.D.N.Y. 2012). ECF No. 30 at 13. The forum selection clause thus bars Kessman's motion to dismiss for lack of personal jurisdiction and improper venue.

Kessman's 12(b)(1) argument fails because it contravenes Supreme Court precedent. In *The Anaconda et al. v. Am. Sugar Refining Co.*, the Supreme Court observed that the FAA "obviously envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate." 322 U.S. 42, 44 (1944); *see also* 9 U.S.C. § 3. In accordance with the Supreme Court's statement, many courts have concluded that "enforcement of a provision compelling arbitration does not implicate the Court's

---

generally construed against the drafter." *RLS Assocs. LLC v. United Bank of Kuwait PLC*, 380 F.3d 704, 712 (2d Cir. 2004).

subject matter jurisdiction." *Livewire Ergogenics*, 432 F.Supp.3d at 399-400 (collecting cases); *see also Bancol Y Cia. S. En. C. v. Bancolumbia S.A.*, 123 F.Supp.2d 771, 772 (S.D.N.Y. 2000) ("an order compelling arbitration does not divest a district court of jurisdiction") (citing *Am. Sugar Refining Co.*, 322 U.S. at 44). This Court likewise holds that entry of an order compelling arbitration does not divest it of subject matter jurisdiction.

Finally, the Court construes Kessman's invocation of Rule 12(b)(6) as a request for dismissal based on the arbitration clause. *See* ECF No. 30, Ex. 1 at 13 ("[The] parties' agreement to arbitrate means that [AKF] has failed to state a claim that can be decided by the Court"). Since Kessman also requests a stay pending arbitration, Second Circuit precedent forecloses dismissal on this basis. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (holding that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested"); *see also Sultan v. Coinbase, Inc.*, 354 F.Supp.3d 156, 162 (E.D.N.Y. 2019) (staying action in which all claims were referred to arbitration); *Pick Quick Food, Inc. v. United Food and Commercial Workers Local 342*, 952 F.Supp.2d 494, 506 (E.D.N.Y. 2013) (staying rather than dismissing litigation where "during oral argument, respondent requested, in the alternative to a dismissal, a stay" and

"petitioner also requested a stay rather than dismissal"). Accordingly, a stay is appropriate in this case. *See* 9 U.S.C. § 3.

## Conclusion

For the foregoing reasons, Kessman's motion to dismiss is DENIED, but its motions to compel arbitration and for a stay are GRANTED. This case is STAYED pending the outcome of the parties' arbitration, and the parties are ORDERED to file an advisory to the Court upon completion of the arbitral process.

The Clerk of Court is DIRECTED to administratively close this case until the arbitration is complete.[5]

**SO ORDERED.**

 _/S/ Frederic Block_____
 FREDERIC BLOCK
 Senior United States District Judge

Brooklyn, New York
January 19, 2021

---

[5] "The effect of an administrative closure is the same as a stay except that [administrative closure] affects the count of active cases pending on the court's docket. . . .[District] courts utilize administrative closure to remove pending cases which are temporarily active elsewhere; i.e., arbitration panel or bankruptcy." *Abreu v. Thomas*, 2019 WL 11157245, at *1 (N.D.N.Y. Jul. 19, 2019) (internal quotations and citations omitted).